IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

WILLIE GENE DAVIS,                    )
                                      )
            Petitioner,               )
                                      )
       v.                             )        Civil Action No. 2:12cv38-WKW
                                      )                (WO)
UNITED STATES OF AMERICA,             )
                                      )
            Respondent.               )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the court on a motion by Willie Gene Davis ("Davis") to vacate, set aside, or correct sentence under 28 U.S.C. § 2255.

## I.  BACKGROUND

On May 13, 2008, a jury found Davis guilty of possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  At sentencing on November 6, 2008, the district court found Davis qualified as an armed career criminal[1] and sentenced him to 220 months in prison.  Davis appealed, arguing that the district court erred in denying his motion to suppress evidence.  On March 11, 2010, the Eleventh Circuit Court of Appeals issued an opinion affirming his conviction.  *United States v. Davis*, 598 F.3d 1259 (11th Cir. 2010).  Davis's petition for certiorari review with the United States Supreme Court was granted, and on June 16, 2011, the Supreme Court affirmed the judgment of the Eleventh Circuit.  *Davis*

---

[1] The Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1), mandates a sentence of not less than 15 years and up to life in prison for a defendant convicted under § 922(g) who has three previous convictions for violent felonies or serious drug offenses.

*v. United States*, ___ U.S. ___, 131 S.Ct. 2419 (2011).

On January 10, 2012, Davis, proceeding *pro se*, filed this motion under 28 U.S.C.

§ 2255 asserting various claims of ineffective assistance of counsel; he specifically asserts:

1.   Trial counsel rendered ineffective assistance by –

   (a)   agreeing with the Government on the facts set out in the suppression motion, without conferring with Davis, and by agreeing that the suppression motion should be denied;

   (b)   denying Davis his right to testify at the suppression hearing;

   (c)   failing to challenge the sufficiency of the evidence to convict Davis;

   (d)   failing to adequately investigate the potentially favorable trial testimony of, or subpoena, certain witnesses;

   (e)   failing to object to the prosecution's withholding of a potential defense witness subpoenaed by the Government;

   (f)   failing to object to trial testimony from Davis's parole officer and the prosecution's reference to that testimony during closing arguments; and

   (g)   breaching his duty of loyalty to Davis.

2.   Sentencing counsel rendered ineffective assistance by –

   (a)   failing to investigate the fact or argue that Davis had been paroled in Alabama as a nonviolent offender and thus his Alabama convictions could not constitute "violent felonies" under the Armed Career Criminal Act ("ACCA"); and

2

(b)  failing to argue that use of Davis's prior state convictions to enhance his sentence under the ACCA violated the Double Jeopardy Clause.

3.  Appellate counsel rendered ineffective assistance by –

(a)  failing to communicate with Davis about his appeal, including which claims he wanted to present on appeal; and

(b)  failing to challenge the Government's factual representations in its appellate brief about a jacket where the firearm was found.

Doc. No. 1 at 4-12; Doc. No. 2 at 2-19.[2]

After consideration of Davis's § 2255 motion, the submissions supporting and opposing the motion, and the record, the court concludes that an evidentiary hearing is not required and that, under Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*, the § 2255 motion should be denied.

## II. DISCUSSION

### A. General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under 28 U.S.C. § 2255 are limited.  A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the

---

[2] Document numbers ("Doc. No.") are those assigned by the Clerk in the instant civil action. Page references are to those assigned by CM/ECF.  References to exhibits ("Exh.") are to exhibits filed by the Government with its response.  References to the trial transcript ("Tr.") are to Exh. A filed with the Government's response.

maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

### B.  Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel must be evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 689. Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's performance: It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted). "Given the strong presumption in favor of competence, the

4

petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." *Id*.

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

A criminal defendant's right to effective assistance of counsel continues through direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Ineffective assistance of

appellate counsel may be shown if the movant can "establish ... that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.... Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

The Supreme Court has held a criminal defendant's appellate counsel is not required to raise all nonfrivolous issues on appeal. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). The Court noted, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id.* at 751-52. Therefore, it is difficult for a defendant to show his counsel was ineffective for failing to raise certain issues on appeal, particularly if counsel presented other strong issues. *Smith v. Robbins*, 528 U.S. 259, 287-88 (2000).

**1.     Claims Against Trial Counsel**

(a)     "Agreement with Government" regarding suppression motion

Davis contends his trial counsel, Joseph P. Van Heest, rendered ineffective assistance by agreeing with the Government on the facts set out in the suppression motion, without conferring with him, and by agreeing that the suppression motion should be denied. Doc. No. 1 at 4; Doc. No. 2 at 2-3.

Van Heest's "agreement" regarding the suppression motion concerned the controlling

law as it stood at the time of the April 2008 suppression hearing.  At the time, *New York v. Belton*, 453 U.S. 454 (1981), authorizing a police officer to conduct a warrantless search of the passenger area of an automobile incident to the lawful arrest of an occupant, was the prevailing law regarding automobile searches incident to arrest.  *See* 453 U.S. at 460-61. Van Heest recognized this and conceded that if the facts at the suppression hearing were as he anticipated them to be, the search of the automobile in which Davis was a passenger, after Davis had been arrested and placed in a police patrol car, which resulted in the discovery of the firearm, was lawful under *Belton* and Eleventh Circuit case law.  *See* Doc. No. 10 at 2-3; Exh. B2 at 2-4.

However, the record reflects that Van Heest also knew that the United States Supreme Court had recently granted certiorari review in a case with similar facts, *Arizona v. Gant*, No. 07-542 (certiorari granted Feb. 25, 2008), to decide whether, under *Belton*, police may conduct a warrantless search of a car if its recently arrested occupant poses no threat to officer safety or preservation of evidence. Exh. B2 at 2-4.  The Supreme Court of Arizona had held that such searches violate the Fourth Amendment where officer safety or evidence preservation is not at stake.  *State v. Gant*, 162 P.3d 640, 642 (Ariz. 2007).  Recognizing that a favorable decision by the United States Supreme Court in *Gant*, if applied to Davis, could result in suppression of the evidence in his case, Van Heest filed the suppression motion based on the potential change in the law.  Doc. No. 10 at 2-3; Exh. B2 at 2-4.  Van Heest requested the hearing in particular because the Government would not stipulate that the facts

of Davis's case would apply to whatever ruling the United States Supreme Court reached in *Gant*. *Id*. Thus, while acknowledging that then-controlling Fourth Amendment law was against Davis, Van Heest actively worked to create a record and preserve a key issue for an appeal by his client.

Van Heest's efforts succeeded. Although this court, applying established precedent, held that the search in Davis's case was a lawful search incident to arrest and denied his suppression motion (Exhs. C & D), following Davis's conviction the United States Supreme Court ruled in *Gant* and held that warrantless automobile searches incident to the arrest of an occupant violate the Fourth Amendment where officer safety or evidence preservation is not a concern. *Arizona v. Gant*, 556 U.S. 332 (2009). Because Van Heest preserved this issue for review in Davis's case, Davis's appellate counsel could present the issue to the Eleventh Circuit in Davis's direct appeal, arguing that the search in his case was unlawful under *Gant*. The Eleventh Circuit held oral argument on this issue and ultimately issued an opinion applying *Gant* to Davis's case and finding that the automobile search incident to Davis's arrest violated his Fourth Amendment rights as defined by Gant, because he was handcuffed and in a police car when the automobile in which he had been an occupant was searched and he was incapable of reaching any weapon or evidentiary item that might have been in the automobile. *United States v. Davis*, 598 F.3d 1259 (11th Cir. 2010). However, the Eleventh Circuit also held that because the search in Davis's case had been conducted by officers relying in good faith on then-controlling law, the exclusionary rule did not apply to

suppress the evidence, i.e., the gun found in the search of the automobile.  *Id*.

The United States Supreme Court granted certiorari review to consider this issue in Davis's case and subsequently issued an opinion affirming the Eleventh Circuit's holding that the exclusionary rule does not apply to searches conducted in objectively reasonable reliance on binding appellate precedent.  *Davis v. United States*, ___ U.S. ___, 131 S.Ct. 2419 (2011).  Thus, the seized evidence in Davis's case was not subject to suppression, and his conviction was affirmed.  *Id*.

The facts outlined above reflect Van Heest's good lawyering regarding the suppression issue in Davis's case.  While understanding that the controlling law at the time of the suppression hearing was against his client, Van Heest acted to preserve and develop a claim for appellate review based on his prescience above a potential change in the law.  In light of that changed law, the appellate courts later found that the search in Davis's case violated his Fourth Amendment rights.  It was only the decisions by the Eleventh Circuit and the Supreme Court that the exclusionary rule did not apply to searches conducted in good-faith reliance on binding precedent that kept the evidence in Davis's case from being suppressed.

Davis fails to demonstrate that Van Heest rendered ineffective assistance of counsel, either by agreeing with the Government on the facts set out in the suppression motion, as Van Heest did not agree to those facts, or by agreeing that the suppression motion should be denied, as Van Heest's only agreement in this regard was that if the facts at the suppression

hearing were as he anticipated, the search in Davis's case was lawful under controlling precedent.  Failing to demonstrate deficient performance by Van Heest or resulting prejudice, Davis is not entitled to relief based on this claim of ineffective assistance of counsel. *Strickland*, 466 U.S. at 689 & 694.

    (b)   <u>Denial of right to testify at suppression hearing</u>

    Davis contends Van Heest rendered ineffective assistance of counsel by denying him his right to testify at the suppression hearing.  Doc. No. 1 at 4; Doc. No. 2 at 5-6.  Davis does not allege that he demanded Van Heest allow him to testify at the suppression hearing or that Van Heest refused to comply with such a demand.  Without specifically stating what his testimony would have comprised, Davis maintains that "defendant's testimony would have disputed the facts set out in the [suppression] motion."  Doc. No. 2 at 6.

    In an affidavit addressing Davis's claim, Van Heest states:

> The purpose of the suppression hearing was to determine the question of whether the gun was found as a result of an unconstitutional search. Whether the defendant knew the gun was there or whether there was in fact a jacket in the car and whether there was a gun in the jacket were not issues for a suppression hearing but rather for trial.  There was nothing to be gained at a suppression hearing through his testimony.  I explained to him that if he wanted to testify at trial he would have the opportunity to do so and if those were the issues that he wanted to address, trial was the time to do so.  Mr. Davis did testify at the trial of the case.

Doc. No. 10 at 4.

    Van Heest's decision not to put Davis on the stand at the suppression hearing was professionally reasonable.  As Van Heest states, there was nothing to be gained at the

suppression hearing through testimony from Davis denying knowledge of the gun's presence in the car in which he was an occupant. Davis's knowledge about the gun did not go to the legality of the search, which was the purpose of the suppression hearing. Further, Davis presents no facts or convincing argument to demonstrate that the outcome of the suppression hearing would have been favorable to him had Van Heest put him on the stand. Thus, he demonstrates no prejudice. Because he fails to demonstrate deficient performance by Van Heest or resulting prejudice, Davis is not entitled to relief based on this claim of ineffective assistance of counsel. *See Strickland*, 466 U.S. at 689 & 694.

    (c)    <u>Challenge to sufficiency of evidence</u>

Davis next contends Van Heest rendered ineffective assistance of counsel by failing to challenge the sufficiency of the evidence to convict him. Doc. No. 1 at 4; Doc. No. 2 at 4-5.

While this claim is presented under the sections of Davis's § 2255 motion and supporting memorandum titled "Ineffective Assistance of Counsel at Suppression Hearing" (*see* Doc. No. 1 at 4; Doc. No. 2 at 4), it is not clear from Davis's argument if he is contending Van Heest was ineffective for failing to challenge the sufficiency of the Government's evidence at the suppression hearing or the sufficiency of the Government's evidence at trial. As Van Heest states in his affidavit addressing this claim, "[s]ufficiency of the evidence is not properly before the court at a suppression motion." Doc. No. 10 at 3. Thus, a challenge to the sufficiency of the evidence to convict would have been frivolous

if presented at the suppression hearing.  If Davis's allegation is that Van Heest failed to challenge the sufficiency of the Government's evidence presented at trial, his allegation is without merit.  The record reflects that Van Heest twice challenged the sufficiency of the Government's evidence at trial through motions for judgment of acquittal presented to the district court.  Tr. at 129, 166-67.

Davis fails to show deficient performance by Van Heest or resulting prejudice.  He is not entitled to any relief based on this claim of ineffective assistance of counsel.

(d)   Failure to investigate and obtain favorable witness testimony

Davis contends Van Heest failed to adequately investigate the potential testimony of, or subpoena, certain witnesses who might have provided favorable testimony at trial.  Doc. No. 1 at 5; Doc. No. 2 at 7-10.

(i)   Dana Pittman

Davis first argues that Van Heest should have subpoenaed Dana Pittman and called her to testify at his trial regarding the circumstances of incriminating statements he made to his state parole officer and his parole officer's failure to record these statements when they were made.  Doc. No. 2 at 7-8.  Van Heest addresses this claim in his affidavit:

> On April 7, 2008, a hearing was held on the State Board of Pardons and Paroles' motion to quash a subpoena for documents showing where Mr. Davis was alleged to have confessed to possessing the firearm to his parole officer, Andy Compton.  During the hearing, at which Compton did not appear, Ms. Pittman, an attorney with the [State of Alabama] Office of Pardons and Paroles, was asked to contact Officer Compton to ascertain whether such document actually existed.  The court recessed while she telephoned Compton and Ms. Pittman returned and advised that Compton had told her he did not

12

have any written records of that conversation.  Therefore, there were no records relevant to the subpoena request and the State was not required to tun over that which did not exist.

On April 22, 2008, the AUSA notified me that Officer Compton had notified him that he had now prepared a document which referenced Mr. Davis's alleged confession to Officer Compton.  That document was not being provided to the government or the defense.  The following day, I filed a motion to revisit the objection and motion to quash the subpoena which had been previously denied as moot.  By April 25, 2008, the document had been provided to the government and then to the defense.  Consequently that motion was again denied as moot, this time because the defense had the document.  As I recall, the government did not move to offer the document into evidence, and I cross-examined Officer Compton about his preparation of a delinquency report with this alleged confession nearly one year after the alleged statement.

There was absolutely no reason to subpoena Dana Pittman from the Office of Pardons and Paroles to testify that Officer Compton had no written reports regarding the alleged confession when she asked him on April 7, 2008, because Compton admitted that he didn't prepare the report until April 21, 2008

.
Doc. No. 10 at 5-6.

Davis fails to demonstrate the value of presenting trial testimony from Pittman.

Davis's state parole officer, Andy Compton, testified at trial, and during cross-examination,

Van Heest established that Compton prepared no document regarding Davis's incriminating

statements to him when the statements were made.  Tr. at 100-01.  Trial testimony from

Pittman to this same effect was unnecessary.  Consequently, Davis fails to establish deficient

performance by Van Heest or any resulting prejudice.

(ii)     *Officer Kenneth Hadley*

Davis next argues that Van Heest should have called Officer Kenneth Hadley to testify

at trial regarding the police inventory sheet for the items found in the automobile after

Davis's arrest.  Doc. No. 2 at 8-9.  Regarding this claim, Van Heest states:

> Mr. Davis complains that I failed to subpoena Officer Hadley to testify that he signed the inventory sheet of the impound record of the vehicle. The critical fact here is that there is no mention of the jacket on the inventory sheet. In fact, the jacket neither appeared in the inventory nor in the booking property inventory and this raised a question which I argued to the jury as to the very existence of the jacket in which the gun was alleged to have been found.
>
> Right before trial the government provided a copy of that inventory sheet.  My best recollection is that I questioned Officer Miller – the arresting officer – about the jacket from which he claimed to have removed the gun and used the inventory sheet in that questioning.  Despite my efforts to have the inventory sheet admitted through either Officer Miller (Officer Hadley's supervisor) or ATF Agent McNeil (the case agent), the trial court denied admission of the inventory sheet into evidence but permitted me to use it to cross-examine Officer Miller.  I believed this to be an erroneous ruling and placed my objection on the record.  I believe the court should have admitted the inventory sheet through either Officer Miller or ATF Agent McNeil, both of whom were familiar with it and were responsible for its delivery to the prosecution.  My best recollection is that I only received the inventory sheet immediately before trial. I would have had no other reason to subpoena Officer Hadley.  In fact there were reasons to not call Officer Hadley – it was unknown whether he could have bolstered Officer Miller's testimony about the stop and search as both were at the scene.  In my opinion, Officer Miller was not a strong witness for the government and I already had his testimony locked in from the suppression hearing.  I do not believe that the failure to call Officer Hadley to authenticate the inventory sheet was necessary as both his supervisor, Officer Miller, and the ATF Agent to whom it had been provided, could authenticate the sheet.

Doc. No. 10 at 6-7.

Despite the district court's ruling preventing the admission of the actual inventory

sheet into evidence at trial, Van Heest, through his cross-examination of Officer Miller,

elicited evidence establishing that the inventory sheet did not mention the jacket in which

14

Officer Miller maintained he had found the gun. Tr. at 65-68. Testimony from Officer Hadley to the same effect, or through which the actual inventory sheet might have been admitted, would have added little to the point Van Heest made through cross-examining Officer Miller. Davis fails to establish deficient performance by Van Heest or any prejudice resulting from his failure to call Officer Hadley to testify.

> ### (iii)   _Stella Owens_

Davis says Van Heest should have called Stella Owens, the driver of the car where the gun was found and in which he was a passenger, to testify regarding Davis's knowledge of the presence of the gun. Doc. No. 2 at 9-10. Regarding this claim, Van Heest states:

> Stella Owens was subpoenaed by the prosecution. She was in the building. My best recollection is that at some point either immediately before or during trial I spoke with Ms. Owens and Ms. Owens would not have been a helpful witness. She provided a statement to the government which was forwarded to the defense. Owens said she did not see the gun and that she had never seen Mr. Davis with a gun before. However, she also said that the gun was not hers, that she does not own a gun, and that she did not have any knowledge of any person leaving a gun in her car. She was also pulled over for DUI and was drunk on the night in question. Therefore, Stella Owens would not have strengthened the defense.

Doc. No. 10 at 7.

The decision of which witnesses to call "is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." _Waters v. Thomas_, 46 F.3d 1506, 1512 (11th Cir. 1995). "Whether to present certain testimonial evidence is a matter of trial strategy, and complaints of uncalled witnesses are generally disfavored." _Sanders v. United States_, 314 Fed. App'x 212, 213 (11th Cir. 2008); _see Graves v. Cockrell_, 351 F.3d 143, 156 (5th Cir.

2003).  Here, Van Heest's decision not to present testimony from Owens was professionally reasonable, as she did not seem a reliable witness, and she may have presented testimony as damaging to Davis as it was helpful – as she disavowed ownership of the gun and knowledge of its presence in her car, and the evidence established that only she and Davis were present in her car.

Further, Davis does not establish that Owens would have provided testimony beneficial to his defense.  Courts view ineffective assistance claims with great caution when the only evidence of a missing witness's testimony comes from the defendant.  *See, e.g.,* *Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985).  "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."  *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted).

Davis demonstrates neither deficient performance by Van Heest nor resulting prejudice.  Therefore, he is not entitled to relief based on this claim of ineffective assistance of counsel.

       (e)    Government's "withholding" of witness

Davis contends Van Heest rendered ineffective assistance by "fail[ing] to argue the fact that the prosecution had subpoenaed and withheld [Stella Owens] as a potential defense witness, causing a possible miscarriage of justice."  Doc. No. 1 at 5; Doc. No. 2 at 10.

As Van Heest's affidavit establishes, Stella Owens "was subpoenaed and was available to the defense to call as a witness.  The prosecution did not subpoena her and keep her hidden from the defense."  Doc. No. 10 at 7.  Van Heest did not call Owens to testify because he decided her testimony would not strengthen Davis's defense.  *Id*.  Davis's assertion that the prosecution "withheld" Owens and prevented her from testifying is baseless.  Counsel is not ineffective for failing to argue a meritless issue.  *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992).  Therefore, Davis is not entitled to any relief based on this claim.

(f)    Failure to object to testimony of parole officer

Davis contends Van Heest was ineffective for failing to object to testimony from his parole officer, Andy Compton, and to the prosecution's reference to Compton's testimony during closing arguments.  He suggests the Government's use of Compton's testimony constituted prosecutorial misconduct.  Doc. No. 1 at 5; Doc. No. 2 at 8, 11.

At trial, Compton testified he was supervising Davis's state parole at the time of his April 2007 arrest.  Tr. at 96.  After learning from the police that Davis had been arrested, Compton asked Davis at their next scheduled meeting what had happened.  *Id*. at 97.  According to Compton:

> [Davis] advised me that he, a black female, and a black male were riding around Greenville drinking alcohol.  And at some point in time, the other black male in the vehicle got out and left his pistol laying on the seat.  And when the police stopped Mr. Davis and the black female, he picked it up and put it in his pocket because he was scared, because he knew he wasn't supposed to have a pistol.

17

*Id*. at 97-98.

Compton further testified that Davis specifically told him he had put the pistol in his jacket pocket. *Id*. at 98. During closing arguments, the prosecutor referred to Compton's testimony, arguing it bolstered Officer Miller's trial testimony he had found the gun in the pocket of a jacket Davis was wearing but then left inside the car after Officer Miller directed him to exit the vehicle. *Id*. at 173. Compton's testimony also contradicted Davis's testimony at trial that he was not wearing a jacket before his arrest and that he never had a gun in his possession.

Davis appears to argue that Van Heest should have objected to Compton's testimony regarding his statements to Compton as inadmissible hearsay. Doc. No. 2 at 8. However, Compton's testimony regarding Davis's statements to him was clearly admissible as non-hearsay under Fed. R. Evid. 801(d)(2)(A), which pertains to admissions of a party-opponent. *See, e.g., United States v. Allison*, 908 F.2d 1531, 1534 (11ᵗʰ Cir. 1990). Because Compton's testimony was admissible and relevant, there was no impropriety in the prosecutor's reference to that testimony during closing arguments. There was no basis for Van Heest to object either to Compton's testimony or the prosecutor's reference to Compton's testimony. Because counsel is not ineffective for failing to argue a meritless issue, *Chandler*, 240 F.3d at 917; *Winfield*, 960 F.2d at 974, Davis is not entitled to any relief based on this claim.

(g)    Breach of duty of loyalty

Davis claims that a conflict of interest arose from Van Heest's "breach of his duty of

loyalty to [the] defendant." Doc. No. 1 at 8; Doc. No. 2 at 13-14. The grievances Davis alleges to support this claim are essentially restatements of the above-discussed claims of Van Heest's purported ineffective assistance of counsel, particularly Davis's claims regarding the suppression motion and hearing. The court finds none of these claims to be meritorious.

In his affidavit filed with this court, Van Heest addresses Davis's assertions of conflict of interest and breach of duty of loyalty:

> It appears that Mr. Davis is relying upon a misunderstanding or refusal to acknowledge what I explained to him on numerous occasions regarding the alleged "agreement" about facts for the suppression hearing. That an evidentiary hearing was held is evidence that the facts were not agreed upon. If there had been a factual stipulation, there would have been no need for an evidentiary hearing. However, I did correctly inform Judge Moorer [who conducted the evidentiary hearing] as to the current state of the law and the reason for filing the suppression motion. Candor to the tribunal as to the state of the law does not create a divided loyalty to the client.

> Mr. Davis and I *never* agreed that he would testify at the suppression hearing. In fact, I explained the basis for the suppression motion to him and that the suppression motion was limited to the legality of the search of the car. There is nothing that Mr. Davis could have added at the hearing to advance the suppression theory. By the April 8, 2008 suppression hearing, I had spent over four hours meeting with Mr. Davis at the jail or discussing on the telephone the legal and factual issues in his case. We discussed the suppression hearing in great detail.

> Over the six months I represented Mr. Davis, I met with him at the jail on eight occasions for a total of 12.1 hours. I also had seven court appearances with Mr. Davis and spent an additional 18.6 hours with him in court. Mr. Davis refused to accept certain aspects of the law. He apparently rejects my candor with the court about the state of the fourth amendment with regard to the suppression hearing. He further rejected the law as it applied to the Armed Career Criminal Act and crimes deemed to be violent under the Act. He was

19

unwilling to accept legal explanations which would result in the harsh sentencing required by the Armed Career Criminal Act.  This, as well as the guilty verdict, led to his dissatisfaction with me.

On July 23, 2008, Mr. Davis filed a *pro se* motion requesting that he be granted new counsel.  On July 28, 2008, Judge Moorer conducted a brief hearing on the matter.  At the conclusion of the hearing, Judge Moorer directed Probation Officer Kevin Poole and I to go to the jail and meet with Mr. Davis to try to explain the sentencing law as it was expected to apply in Mr. Davis's case.  On July 30, 2008, Kevin Poole and I met with Mr. Davis for over two hours.  As he had done with me, Mr. Davis rejected Officer Poole's explanation of the application of the sentencing laws and guidelines which resulted in an argument between the two of them.  At the conclusion of the meeting, it was my understanding that Officer Poole was going directly back to Judge Moorer to report the results of the meeting.  Later that same day, Judge Moorer granted Mr. Davis's request for new counsel and permitted me to withdraw.

I never breached my duty of loyalty to Mr. Davis during the six months I represented him.  Rather, Mr. Davis was simply unhappy with the outcome and his predicament so he lashed out at his defense lawyer.  I did not have any conflict of interest. If a conflict of interest had arisen, I would have immediately sought to withdraw.

Doc. No. 10 at 7-9.

Davis fails to demonstrate a conflict of interest or breach of duty of loyalty by Van Heest.  Therefore, he is not entitled to any relief based on this claim.

## 2.    Claims Against Sentencing Counsel

(a)    Davis's parole and sentencing court's consideration of Alabama convictions as "violent felones" under the ACCA

Davis contends his counsel at sentencing, Timothy C. Halstrom, was ineffective for failing to investigate the fact or argue that Davis had been paroled in Alabama as a nonviolent offender.  Doc. No. 1 at 10; Doc. No. 2 at 15-17.

20

It is clear from the record that Halstrom was well aware – as was the district court – that Davis was on parole in Alabama when he was arrested in April 2007. Davis's argument here appears to be that he was considered a nonviolent offender under Alabama's parole regulations and was eligible for parole from his state sentence, and therefore Halstrom should have argued that his Alabama convictions could not qualify as "violent felonies" under the Armed Career Criminal Act ("ACCA").

Assuming Davis was considered a nonviolent offender under Alabama's parole regulations, Davis can point to no controlling authority to support his contention that the classification of his crimes under Alabama's parole regulations would determine whether his prior Alabama convictions qualified as "violent felonies" under the ACCA. His argument in this regard is a non-starter. Moreover, at sentencing, Halstrom argued strenuously against Davis's prior burglary and escape convictions as qualifying offenses under the ACCA, and specifically contended that the conduct underlying those convictions was nonviolent. *See* Exh. R at 8-35. Despite Halstrom's efforts, the district court found that the convictions constituted "violent felonies" under the ACCA.[3] Davis fails to demonstrate deficient performance by Halstrom or resulting prejudice. Therefore, he is not entitled to relief based

---

[3] The ACCA applies where a defendant convicted under 18 U.S.C. § 922(g) has at least three prior convictions for "violent felonies" or serious drug offenses. 18 U.S.C. § 924(e)(1). The district court found that Davis's prior Alabama convictions for second-degree burglary, third-degree burglary, and second-degree escape were qualifying "violent felonies" under the ACCA. In addition, the district court found that Davis had at least two Alabama convictions for distribution of controlled substances that qualified for use (as serious drug offenses) under the ACCA. Thus, the court found that Davis had at least five qualifying prior convictions under the ACCA.

on this claim of ineffective assistance of counsel.  *See Strickland*, 466 U.S. 689 & 694.

> (b)    Failure to argue double jeopardy claim

Davis contends Halstrom was ineffective for failing to argue that use of his prior state convictions to enhance his sentence under the ACCA violated the Double Jeopardy Clause because the prior convictions relied upon to make the ACCA determination had been used previously to enhance a sentence in state court.  Doc. No. 1 at 10-11; Doc. No. 2 at 15-17.

> Enhancement statutes "do not change the penalty imposed for the earlier conviction," but "penaliz[e] only the last offense committed by the defendant." *Nichols v. United States*, 511 U.S. 738, 747, 114 S.Ct. 1921, 1927, 128 L.Ed.2d 745 (1994).  The Supreme Court has reaffirmed that sentence enhancements are not construed as additional punishment for a previous offense, but only increase a sentence because of the manner of the crime, and the enhancements are neither a new jeopardy nor an additional penalty for the earlier crimes, but a harsher punishment for the newest crime.  *See Monge v. California*, 524 U.S. 721, 728, 118 S.Ct. 2246, 2250, 141 L.Ed.2d 615 (1998).

*United States v. Gomez*, 219 Fed. App'x 889, 891 (11th Cir. 2007).  Enhancement of Davis's federal sentence using convictions previously used to enhance his state sentence did not violate the Double Jeopardy Clause.  *See United States v. Whitby*, 896 F.Supp. 898, 903 (W.D. Wis. 1995) (rejecting a double jeopardy claim almost identical to Davis's).  Halstrom did not render ineffective of counsel by failing to argue a meritless issue.  *Chandler*, 240 F.3d at 917; *Winfield*, 960 F.2d at 974.  Davis is not entitled to any relief based on this claim.

**3.    Claims Against Appellate Counsel**

> (a)    Failure to communicate during appeal

Davis contends his counsel on appeal, William W. Whatley, was ineffective for failing

to communicate with him about his appeal, including which claims he wanted to present on appeal. Doc. No. 1 at 11-12; Doc. No. 2 at 18. Davis specifically faults Whatley for failing to argue on appeal that there was insufficient evidence to support his conviction. Doc. No. 1 at 12. Davis also appears to fault Whatley for failing to present his above-discussed double jeopardy claim regarding the enhancement of his sentence under the ACCA. *Id.* at 11.

Davis's claim regarding the sufficiency of the evidence was fully – and unsuccessfully litigated in the district court. There was, moreover, ample evidence to support a jury finding that he knowingly possessed a firearm as a convicted felon. Davis cannot show that Whatley's decision not to pursue this issue on appeal was unreasonable or prejudicial. Therefore, he fails to show that Whatley rendered ineffective assistance of counsel in this regard.

As discussed above in Part II.B.2(b) of this Recommendation, there is no merit to Davis's claim that enhancement of his sentence under the ACCA using convictions previously used to enhance his state sentence violated the Double Jeopardy Clause. Whatley did not render ineffective assistance of counsel by failing to raise such a claim on appeal.

Davis also alleges that Whatley did not provide him with a copy of the Government's appeal brief for "nearly 8 months." Doc. No. 2 at 18. Assuming this is true, Davis demonstrates no resulting prejudice. Therefore, he is not entitled to any relief based on this claim.

    (b)    <u>Failure to challenge factual representations in Government's appellate brief</u>

23

Finally, Davis contends Whatley was ineffective for failing to challenge the Government's factual representations in its appellate brief about the existence of the jacket where the firearm was found.  Doc. No. 1 at 12; Doc. No. 2 at 18-19.  The Government established the existence of the jacket through the eyewitness testimony of Officer Miller.  Moreover, Davis's parole officer, Andy Compton, testified that Davis had told him he put the firearm inside the pocket of a jacket.  The credibility of this testimony was for the jury to determine, and it was unnecessary, as Davis appears to suggest, that the actual jacket be introduced into evidence at trial.  There was nothing improper about the Government's factual representations in its appellate brief about the existence of the jacket.  Whatley's failure to pursue such a claim on appeal did not constitute ineffective assistance of counsel, and Davis is not entitled to any relief based on this claim.

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Davis be DENIED with prejudice.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before August 28, 2014.  A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District

Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 13th day of August, 2014.


/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE